IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| DOCTOR JOHN'S, INC., a Utah corporation; and JOHN HALTOM,<br><br>    Plaintiffs,<br><br><br><br>    vs.<br><br><br>CITY OF ROY; G. BLACK WAHLEN, in his official capacity as City Manager; and TAMMY NELSON, in her official capacity as Development Services Manager,<br><br>    Defendants. | ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS<br><br><br><br><br><br>Case No. 1:03-cv-00081 |

Doctor John's, Inc., is an "adult business," located in the City of Roy, Utah.  Doctor John's initially filed this suit as a constitutional challenge to  the City's sexually-oriented business ordinance.  The court granted summary judgment to the City of Roy originally, but on appeal, the Tenth Circuit remanded this case so the court could consider a very narrow issue related to Doctor John's First Amendment free-speech claim.[1]  Now, the court finds it necessary to grant summary judgment to the City of Roy with regard to this last, narrow issue.  Doctor John's has simply failed to cast doubt on the City's rationale or the factual basis behind the City

---

[1] *See Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1173 (10th Cir. 2006).

of Roy's sexually-oriented business ordinance.

## BACKGROUND

For purposes of this order, familiarity with the factual background cited in the court's summary judgment opinion of September 7, 2004,[2] is presumed.  In this 2004 opinion, the court addressed the parties' cross-motions for summary judgment, ultimately granting summary judgment in favor of the City of Roy with regard to the federal questions and dismissing the state questions without prejudice.[3]  Doctor John's appealed this court's judgment.  On appeal, the Tenth Circuit affirmed this court's decision in most respects, but remanded the case with regard to one narrow issue — Doctor John's time-place-manner challenge to the City's ordinance.[4]

Specifically, the Tenth Circuit indicated that it was unclear what evidence the parties presented to the court and what evidence the court considered in determining if, under the First Amendment, the City of Roy's ordinance was narrowly tailored to serve a significant governmental interest.  The Tenth Circuit concluded that prevention of negative secondary effects associated with "adult" businesses constitutes a significant governmental interest.  However, the Tenth Circuit indicated a thorough review of the evidence in support of and against a city's rationale for its sexually-oriented business ordinance is essential to assessing whether the ordinance is narrowly tailored to a city's interest in preventing the secondary effects of such businesses.  Because the extent of this court's consideration of the evidence was unclear, the

---

[2] *See* Mem. Op. Den. Mots. for Summ. J. (Docket No. 53).

[3] *See id.*; *see also* Judgment (Docket No. 54).

[4] *See Doctor John's*, 465 F.3d at 1173.

Tenth Circuit remanded the case with instructions to review the evidence under the burden-shifting scheme of *City of Los Angeles v. Alameda Books, Inc.*[5]

In accordance with this mandate and pursuant to the *Alameda Books* scheme, the court ordered the City of Roy to first brief how the studies upon which it relied support the rationale underlying its ordinance and how the studies establish a connection between the negative secondary effects of sexually-oriented businesses and the City of Roy's ordinance.  In its response, Doctor John's was to explain how the studies it provided cast doubt on the City's evidence.

## STANDARD OF REVIEW

The Tenth Circuit remanded this case after Doctor John's appealed this court's summary judgment ruling.  The court, therefore, reviews the parties' current motions in light of their original motions for summary judgment and reviews all evidence pursuant to a summary judgment standard.  This standard of review is unchanged by the parties' additional briefing.  The court ordered the parties to submit briefs regarding the evidence of the secondary effects of sexually-oriented businesses solely so that the court could review the evidence under the *Alameda Books* burden-shifting scheme.  The posture of the case, therefore, has not changed.

Under this standard, the court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[5] 535 U.S. 425 (2002).

entitled to judgment as a matter of law."[6]  In determining the appropriateness of summary

judgment, the court must "view the evidence, and draw reasonable inferences therefrom, in the

light most favorable to the nonmoving party."[7]  When a case involves cross-motions for summary

judgment, the court "'construe[s] all inferences in favor of the party against whom the motion

under consideration is made.'"[8]  However, "[t]he mere existence of a scintilla of evidence in

support of the [non-moving party's] position will be insufficient; there must be evidence on

which the jury could reasonably find for the [party].'"[9]

## DISCUSSION

In light of the parties' recent briefing and the court's evaluation of the evidence pursuant

to the *Alameda Books* scheme, the court must grant summary judgment to the City of Roy.

Basically, Doctor John's time-place-manner challenge to the City's sexually-oriented business

ordinance centers around the negative "secondary effects" cited by the City of Roy as rationale

for adopting the ordinance.  Doctor John's contends the City of Roy's ordinance is not narrowly

tailored enough to be justified by the City's claims of secondary effects.  The court finds that it

is.

Courts will uphold ordinances targeting the secondary effects of adult business as valid

time-place-manner regulations if they are content-neutral, "narrowly tailed to serve a significant

---

[6] Fed. R. Civ. P. 56(c).

[7] *Combs v. PriceWaterhouse Coopers, LLP*, 382 F.3d 1196, 1199 (10th Cir. 2004).

[8] *Am. Inv. Fin. v. United States*, 364 F. Supp. 2d 1321, 1323 (D. Utah 2005) (quoting *Pirkheim v. First UNUM Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000)).

[9] *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

governmental interest," and leave open "ample alternative channels of communication."[10]  The Tenth Circuit already determined the City of Roy's ordinance is content-neutral,[11] and Doctor John's never argued the ordinance foreclosed alternative means of communication.  The only question on remand, therefore, is whether the City of Roy's ordinance is narrowly tailored to serve a significant government interest.

"In order to show that a challenged ordinance promotes a significant government interest, 'the government bears the burden of providing evidence of secondary effects.'"[12]  Combating the secondary effects of adult business is an established, significant governmental interest.[13]  But regulating cities must be able to provide evidence to support their rationale and the factual findings in support of their ordinances.  The Supreme Court mandates that deference be accorded to legislative findings when assessing "substantial governmental interest," but notes,

> [t]his is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance.  If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*.  If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.[14]

---

[10] *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 688 (10th Cir. 1998).

[11] *Doctor John's*, 465 F.3d at 1164.

[12] *Id.* (quoting *Heideman I  v. Salt Lake City*, 348 F.3d 1182, 1197 n.8 (10th Cir. 2003)).

[13] *Id.*

[14] *Alameda Books*, 535 U.S. at 438–39.

In other words, under *Alameda Books*, it is the government's initial burden to demonstrate its evidence "fairly support[s]" its rationale for the ordinance.[15]  The challenging party can refute this showing by establishing that the city's evidence does not support its conclusions or by providing evidence that disputes the city's factual findings.[16]  If the challenging party succeeds in casting doubt on the city's factual findings, the burden shifts to the government to supplement the record with evidence supporting its theory and justifying the ordinance.[17]

In this case, Doctor John's disputes that the City of Roy adequately met its initial burden, and argues that its evidence undermines the City's evidence.  The City of Roy contends it adequately met its initial burden and that because Doctor John's failed to cast doubt on the justification for the ordinance, this initial evidence sustains it — it has no need to supplement the record.  The City of Roy also claims Doctor John's evidence is insufficient to cast doubt on the City's evidence or rationale, and argues that Doctor John's evidence is procedurally barred because it was submitted in violation of Rule 26 and constitutes hearsay.  Because the admissibility of Doctor John's evidence depends upon the resolution of this procedural challenge, the court addresses this issue first.

I.      **Rules-Based Challenges**

In its motion, the City of Roy renews its earlier motion to strike the exhibits attached to Doctor John's original summary judgment briefs.  The City claims Doctor John's violated Rule

---

[15] *Id.* at 438.

[16] *Id.* at 438–39.

[17] *Id.* at 439.

26[18] by neglecting to disclose discoverable information, then relying on the information in its summary judgment pleading.  The City of Roy also objects to a number of Doctor John's reports as untimely, since they were appended to Doctor John's reply.  Finally, the City of Roy contends Doctor John's reports and exhibits constitute inadmissible hearsay.

Among other things, Rule 26 requires discovery of:

> a copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.[19]

Rule 26 also requires disclosure of expert witnesses and opinions,[20] and requires seasonable supplementation of Rule 26 disclosures.[21]  Rule 37 provides an enforcement mechanism for Rule 26.[22]  It provides that parties failing to disclose the information required in Rule 26(a)(2)(B), without substantial justification, "unless such failure is harmless, [are not] permitted to use as evidence at a trial, at a hearing, or on a motion any . . . information not so disclosed."[23]

The City of Roy contends, and the record shows, that Doctor John's failed to identify any of the individuals referenced in its exhibits as witnesses and failed to identify any of the documents attached to its pleadings as evidence or otherwise discoverable information.  This

---

[18] Fed. R. Civ. P. 26.

[19] Fed. R. Civ. P. 26(a)(1)(B).

[20] Fed. R. Civ. P. 26(a)(2)

[21] *See* Fed. R. Civ. P. 26(c).

[22] Fed. R. Civ. P. 37(c)(1).

[23] Fed. R. Civ. P. 37(c)(1).

failure came despite the City of Roy's request that Doctor John's produce every document or witness upon which it would rely.  In its initial motion, Doctor John's indicated only that it would rely on various corporate records, and would supplement its initial disclosures as warranted.  But Doctor John's never supplemented its disclosures to include the information it later submitted in its summary judgment pleadings.

The City of Roy initially moved to strike a number of Doctor John's documents pursuant to Rules 26 and 37 on July 9, 2004.  The City's initial motion, however, did not address a number of the documents Doctor John's relied on in support of its motion for summary judgment because Doctor John's first filed the documents with its reply.  In other words, the City of Roy effectively had no opportunity to address or respond to those documents.

Neither Doctor John's untimely filings nor its failure to disclose pursuant to Rule 26 were harmless enough to avoid Rule 37 sanctions.  With regard to the untimely filings, it would be unfair to the opposing party for the court to consider new issues or evidence submitted with a reply.  It deprives the court of the benefit of full briefing and deprives the opposing party of a chance to respond.  With regard to the Rule 26 violations, Doctor John's failure to disclose was not harmless because the discovery deadline had expired long before Doctor John's submitted its summary judgment pleadings and its reply memorandum.  The passing of this deadline left the City of Roy unable to follow up, with discovery, on the additional information Doctor John's submitted.  For instance, the City of Roy was foreclosed from retaining experts to consult or testify in rebuttal during the discovery process.  This left the City with no reasonable opportunity to refute or respond to Doctor John's evidence or to adequately oppose it.

Instead of contending that it properly complied with Rule 26, Doctor John's suggests only that because the City of Roy has had over two years to respond to the studies Doctor John's utilized in violation of the rules, the City of Roy has not been prejudiced. According to Doctor John's, the City could have chosen to respond, but did not. This argument fails on two grounds. First, considering the pendency of the appeal, it is unclear when the City of Roy could have responded to the materials. Second, Doctor John's ignores the core problem. Rule 37 sanctions exist precisely because without the benefit of notice and discovery, any response would be necessarily deficient. The court, therefore, finds the evidence Doctor John's submitted in violation of Rule 26 to be inadmissible with regard to the motions at issue.

The City of Roy also claims the materials attached to Doctor John's memorandum are unsworn, out-of-court statements offered for the truth of the matters asserted therein, in contravention of hearsay rules. But in light of its Rule 26 and untimeliness findings, the court need not, and does not, reach this argument. Ultimately, even if Doctor John's evidence were admissible, Doctor John's claims would fail. Pursuant to *Alameda Books*, Doctor John's evidence fails to cast doubt on the City of Roy's rationale or factual findings.

## II.   Evidence Evaluation Pursuant to *Alameda Books*

Under the *Alameda Books* burden-shifting scheme, the City of Roy has the initial burden to demonstrate its evidence "fairly support[s]" its rationale for the ordinance.[24] Doctor John's can refute this showing by establishing that the City of Roy's evidence does not support its

---

[24] *Alameda Books*, 535 U.S. at 438.

conclusions or by providing evidence disputing the City's factual findings.[25]  Only if Doctor

John's succeeded in casting doubt on the City of Roy's factual findings would the burden shift to

the government to supplement the record with evidence supporting its theory and justifying the

ordinance.[26]

In this case, because Doctor John's has not cast doubt on the City of Roy's findings or

rationale, the burden never shifts back to the City to supplement the record.  In other words,

Doctor John's failure to cast doubt on the City of Roy's rationale means the City's initial burden

is its only burden.

A.      *The City of Roy's Initial Burden*

In this case, as the Tenth Circuit noted on appeal, the government has adequately met its

initial burden.[27]  The City of Roy's initial burden is to prove the reasonableness of its concerns

about negative secondary effects, as well as the reasonableness of its belief that the ordinance

will address those concerns.  But this burden is not onerous.[28]  As the Tenth Circuit noted, the

Supreme Court

> refused to set such a high bar for municipalities that want to address merely the
> secondary effects of protected speech.  It stated that cities are entitled to rely, in part,
> on appeal to common sense, rather than empirical data, at least where there is no
> actual and convincing evidence from plaintiffs to the contrary.[29]

---

[25] *Id.* at 438–39.

[26] *Id.* at 439.

[27] *Doctor John's*, 465 F.3d at 1166.

[28] *Heideman I*, 348 F.3d at 1197–99.

[29]  *Doctor John's*, 465 F.3d at 1165 (citation and internal quotations omitted).

In other words, in the absence of contrary convincing evidence, cities can rely on evidence they reasonably believe to be relevant, as well as on common sense.  To that end, cities can even rely on "seemingly pre-packaged studies, as well as the findings of courts in other cases."[30]

There is no question the City of Roy met its initial burden.  The City of Roy relied on reports that had been validated in other court cases, including many of the same reports relied on by the City of Aurora in *Z.J. Gifts D-2, L.L.C. v. City of Aurora*.[31]  The Tenth Circuit validated Aurora's reliance on those reports in 1998.[32]  And, most important, the Tenth Circuit determined *in this case* that the City of Roy's reliance on seemingly pre-packaged studies was "quite permissible to meet the City's slight initial burden, even if the studies do not address SOB's precisely like Dr. Johns."[33]

In the end, this initial burden carries the City of Roy through the entire *Alameda Books* scheme because even if the court considers all the evidence Doctor John's submitted with its summary judgment briefs, Doctor John's failed to present any actual or convincing evidence undermining the City of Roy's evidence.

B.     *Doctor John's Attempts to "Cast Doubt"*

Although the court's briefing order specifically directed Doctor John's to explain how the studies it provided cast doubt on the City of Roy's evidence, Doctor John's failed to do so.

---

[30] *Heideman I*, 348 F.3d at 1197.

[31] 136 F.3d 683 (10th Cir. 1998)

[32] *See id.* at 687 n.1.

[33] *Doctor John's*, 465 F.3d at 1166.

Instead, Doctor John's responds to the City of Roy's Rule 26 and hearsay arguments, and discusses claims already foreclosed by the Tenth Circuit's findings on appeal.[34]  But Doctor John's declines to explain how the material it submitted is sufficient to overcome the City of Roy's evidence.  Basically, Doctor John's argues that the City of Roy did not put forth its case that it acted rationally and due to specific concerns about secondary effects, so Doctor John's did not need to justify the sufficiency of the material it submitted.  What Doctor John's first misses is, as discussed above, the Tenth Circuit already determined that the City of Roy met its initial burden.[35]  Second, the City did put forth its case that it acted rationally — it just did so while disputing the sufficiency of Doctor John's evidence.  For instance, in its initial, post-remand brief, the City of Roy discusses its ability to rely on anecdotal evidence and the City's reasonable belief in the relevance of its evidence to the secondary effects it hoped to prevent.[36]

Doctor John's failure to meet its evidentiary burden cannot be blamed on lack of opportunity.  The court granted the parties generous page limits for their briefs because the court wanted to ensure both sides had every reasonable opportunity to make their cases.  Doctor John's, for instance, had leave to file fifty pages of argument in its response.  But Doctor John's argument section amounts to less than nine pages, none of which address this pivotal issue. Doctor John's effectively left the court to rely on the arguments it made in its 2004 pleadings and

---

[34] *See id.* at 1159–60 (upholding the validity of "substantial" standard in the City of Roy's ordinance); *id.* at 1164 n.15 (finding the ordinance to be content-neutral).

[35] *Id.*

[36] Defs.' Mot. Strike 13–17 (Docket No. 68).

on the court's own independent review of the evidence — all of which shows the evidence is insufficient to cast doubt on the City of Roy's rationale and justification for its ordinance.

Reading its initial summary judgment pleadings generously, Doctor John's makes three arguments in its attempt to show the City of Roy's ordinance is not narrowly tailored to serve a significant government interest.  First, Doctor John's argues it is a different kind of business than other adult businesses.  Second, Doctor John's argues the City of Roy erroneously fails to distinguish between "on-site" and "off-site" businesses with regard to secondary effects.  Third, Doctor John's claims its evidence as a whole is sufficient to cast doubt on the City of Roy's rationale.  The Tenth Circuit rejected Doctor John's first and second arguments, and this court, of course, follows suit on remand.  With respect to the third point, regarding the evidence as a whole, the court finds Doctor John's did not succeed in casting doubt on the City of Roy's factual findings.  Doctor's John's evidence does not undermine or refute the City's demonstration that its evidence fairly supports its rationale for the sexually-oriented business ordinance.

### 1.    Doctor John's as a Different Kind of Business

In its original summary judgment briefing, Doctor John's argued that the City of Roy's cited studies were not relevant to a business like Doctor John's on a common-sense level because Doctor John's is a different kind of business.  Doctor John's based this contention on the high percentage of its customers who are women and couples and the high percentage of its stock that are "non-adult" materials.  But the Tenth Circuit rejected this argument, noting that Doctor John's claim alone — in absence of supportive evidence — was insufficient to cast doubt on the

City of Roy's rationale for its ordinance.[37]  Post remand, Doctor John's has done nothing to bolster this claim or to show how its evidence supports it, so the claim fails before this court as well.

2.   On-Site/Off-Site Distinction

Doctor John's also argued, originally and on appeal, that the City of Roy's ordinance — by failing to distinguish between businesses offering entertainment on the premises and those requiring customers to leave the premises to utilize their purchases — is not narrowly tailored to serve a significant government interest.  With regard to this on-site/off-site business distinction, the Tenth Circuit noted that to meet its initial burden, the City of Roy need not offer evidence of a specific connection between off-site businesses and secondary effects.[38]  In other words, that Doctor John's might qualify as an off-site business while many of the studies focus on on-site businesses does not change the nature of the City's initial burden or alter the court's determination that the City of Roy effectively met that burden.

According to the Tenth Circuit, the only possible relevance of Doctor John's on-site/off-site argument may be to cast doubt on the ordinance because,

> although a city need not initially come forward with specific evidence of a connection between negative secondary effects and each precise type of business regulated under its ordinance, a plaintiff may be able to challenge a city's rationale for its ordinance by pointing to evidence that its type of adult business (e.g., "off-site") is relevantly different than those types of business analyzed in the studies supporting the ordinance

---

[37] *Doctor John's*, 465 F.3d at 1165.

[38] *Id.* at 1168.

(e.g. "on-site").[39]

The Tenth Circuit then observed,

> [h]ere, however, Dr. John's points to no evidence showing that off-site SOBs have materially different secondary effects that would call into question the studies relied on by Roy City.  Simply stating that off-site businesses are different from on-site business is not sufficient to shift the burden back to the city.  We owe "deference to the evidence presented by the city" due to the fact that cities are "in a better position than the Judiciary to gather and evaluate data on local problems."[40]

In other words, the on/off-site distinction is valid only insofar as the plaintiff undermines the defendants' evidence as it pertains to off-site businesses.  Doctor John's has not done this.  In fact, Doctor John's has not even attempted to argue that its evidence might serve this undermining function.  Instead, Doctor John's makes broad, unsupported claims that it is not the kind of adult business that can be reasonably thought to produce the secondary effects that form the basis for the City of Roy's concern and that the City's studies and rationale fail to apply to businesses that sell products for off-site use only.  But such bald claims do not suffice to cast doubt on the City of Roy's evidence.  They simply do not constitute "actual and convincing evidence."[41]  To put it another way, Doctor John's has neglected to submit evidence showing *how and why* its particular activities and establishment do not present concerns similar to those addressed in the studies on which the City of Roy relied.  Consequently, Doctor John's fails to shift the burden back to the City with this argument.

---

[39] *Id.*

[40] *Id.* (quoting *Alameda Books*, 535 U.S. at 440).

[41] *Id.* at 1165.

                    3.        Doctor John's Evidence

        Finally, in its original motions, Doctor John's presents evidence attempting to call into

question the validity of the City of Roy's studies and its rationale for the ordinance.  On appeal,

the Tenth Circuit found it to be unclear whether this court considered the extent to which Doctor

John's evidence might cast doubt on the City of Roy's rationale.  In particular, the Tenth Circuit

suggested that the Paul, Linz, and Shafer article,[42] which criticizes the methodology used in the

most frequently cited secondary-effects studies, "might cast doubt" on the City's evidence and

rationale.[43]  But the Tenth Circuit reached no firm conclusion on this issue.  On remand, the court

has reviewed this evidence and Doctor John's original arguments supporting it, in addition to the

evidence supplied by the City of Roy.  All in all, the court finds Doctor John's evidence fails to

cast doubt on the City's rationale, so the burden, under *Alameda Books*, never shifts back to the

City.

        In support of its observation that the Linz article "might" cast doubt on the City of Roy's

rationale that its ordinance was needed to prevent the secondary effects of sexually oriented

businesses, the Tenth Circuit cited *Giovanni Carandola, Ltd. v. Fox*.[44]  In *Fox*, the United States

District Court for the Middle District of North Carolina found the Linz article, in addition to

other evidence, cast doubt on the "'pre-packaged studies' relied on by cities in support of adult

---

        [42] Bryant Paul, Daniel Linz & Bradley Shafer, *Government Regulation of "Adult"
Businesses Through Zoning and Anti-Nudity Ordinances: Debunking the Legal Myth of Negative
Secondary Effects*, 6 COMM. L. & POL'Y 355 (2001) (Docket No. 43, Exh. E).

        [43] *Doctor John's*, 465 F.3d at 1169.

        [44] *See* 396 F. Supp. 2d 630, 651 (M.D.N.C. 2005).

business ordinances.''[45]  But this holding is unpersuasive when applied to the facts here.  First, *Fox* only mentioned the Linz article in passing — the article itself did not form the basis of the court's finding that the plaintiffs had cast doubt on the government's studies.[46]  Instead, as a basis for finding that the plaintiffs successfully shifted the burden back to the government to support its studies, the court focused on the trial testimony of the study's author, Daniel Linz, and that of another expert, Bruce McLaughlin.[47]  Thus, the court did not find the Linz article alone sufficient to cast doubt on the government's studies.  And, ultimately, the court found the additional testimony adduced by the government supported the ordinance sufficiently to uphold it.[48]

In this case, unlike the plaintiffs in *Fox*, Doctor John's has not presented any actual or convincing evidence to supplement the Linz article.  In fact, Doctor John's failed to take advantage of the myriad ways it might have called the City of Roy's evidence into question.  For instance, like the plaintiffs in *Fox*, Doctor John's could have proffered expert testimony specifically attacking the validity of the studies and the reports the City of Roy relied upon when enacting the ordinance.  Or, Doctor John's could have provided relevant expert depositions.  Doctor John's could have submitted sworn statements from property owners neighboring its business, attesting to the lack of negative secondary effects from its business, such as drug activity in the area.  Or, Doctor John's could have hired experts to complete their own statistical

---

[45] *Doctor John's*, 465 F.3d at 1169 n.24.

[46] *See* 396 F. Supp. 2d at 642.

[47] *Id.* at 642–47.

[48] *Id.* at 651.

evaluations of secondary effects in the City of Roy.

While the court cannot definitively say submission of such evidence would have sufficed to raise a genuine issue of material fact as to the tailoring of the City of Roy's ordinance to diminishing the secondary effects of sexually-oriented businesses, proffering such evidence would have been a step in the right direction. Instead, Doctor John's offers as evidence an unexplained chapter of a report,[49] an unsworn affidavit,[50] two summaries of reports that find negative secondary effects from adult businesses,[51] an article on the free exercise of religion,[52] and the Linz article. And Doctor John's fails to even argue the relevance or applicability of most of its evidence.

On a very broad level and at first glance, the Linz article appears to undermine the validity of sexually-oriented business studies in general. But closer examination reveals this to be untrue. The Linz article generally fails to undermine sexually-oriented business studies as used by cities and specifically fails to address many of the sources upon which the City of Roy relied. The Linz article purports to analyze 107 reports on the secondary effects of adult

---

[49] Eric Damian Kelly & Connie Cooper, *"Everything You Always Wanted to Know About Regulating Sex Businesses ₓₓₓ"*, PLAN. ADVISORY SERV. REP. (Am. Plan. Ass'n, Chi., Ill.), Dec. 2000 (Docket No. 32, Exh. A).

[50] Unsigned Aff. of Bruce McLaughlin (Docket No. 32, Exh. B).

[51] Louis F. Comus III, Summary of Key Reports Concerning the Negative Secondary Effects of Sexually Oriented Businesses (Docket No. 43, Exh. B); Adult Studies as Summarized by Louis Comus (Docket No. 43, Exh. C).

[52] Von G. Keetch & Matthew K. Richards, *The Need for Legislation to Enshrine Free Exercise in the Land Use Context*, 32 U.C. DAVIS L. REV. 725 (1999) (Docket No. 43, Exh. D).

businesses — what it claims to be a "representative number."[53]  Although the article's authors conclude that the scientific reliability of the most-often used studies is questionable, the authors neglect to even list the 107 studies they reviewed, let alone to include an evaluative break-down of each study.  Instead, the authors break down what they refer to as the four studies most often relied upon by municipalities in justifying their sexually-oriented business regulations.  The authors then perform a similar evaluation of the ten next-most-cited studies.

In its half-paragraph discussion of the Linz article, Doctor John's neglects to inform the court which of the studies the Linz article addressed were relied upon by the City of Roy.  As far as the court can tell, only four of the fourteen studies and reports cited by the City of Roy appear in the Linz article.  After reviewing these four studies, the authors conclude each study contains both positive and negative components, and find each of them to be scientifically flawed in at least one area.  The other ten reports and studies on which the City of Roy relied are not specifically addressed in the article — their validity is not challenged by the authors other than in the most general way.  Along with these fourteen reports and studies, the City of Roy relied on an additional fourteen sources.  Doctor John's cited no evidence specifically addressing these other sources and studies.  The Linz article, therefore, does not support a broad, sweeping, conclusion that sources citing to the secondary effects of adult businesses necessarily lack scientific validity or that all the studies the City of Roy relied upon lack scientific validity.

Even if the Linz article conclusively proved that every study on the secondary effects of sexually-oriented businesses entirely lacked scientific validity and reliability, the court would

---

[53] Paul et al., *supra* note 42, at 368.

still be compelled to reject the Linz article in this context. This is because its standards for evaluating the studies differ greatly from the standards the court uses to address evidence in cases such as this. The article's authors reviewed the studies using *Daubert* reliability factors,[54] essentially arguing that the methodological standards for federal courts to accept scientific evidence under *Daubert* should apply to studies relied on by cities. While *Daubert* has a solid and well-founded place in federal jurisprudence, it has no place in the realm of sexually-oriented business ordinances. Even Doctor John's concedes this point: "Nor do courts generally require that the studies stand up to the standards of *Daubert* . . . ."[55] Simply put, the standard cities are held to under *Alameda Books* differs greatly from the *Daubert* standard. In other words, the Linz article would only serve to "cast direct doubt"[56] if the Supreme Court had required the evidence cities rely upon in support of their adult business ordinances to meet *Daubert* standards. But the Court declined to impose such a requirement, "flatly reject[ing]" the idea that empirical analysis of secondary effects is required: "'invocation of academic studies said to indicate' that the threatened harms are not real is insufficient to cast doubt on the experience of the local government."[57] Instead, the Supreme Court has given cities leave to rely upon any evidence "reasonably believed to be relevant"[58] to the secondary effects of adult businesses. The Linz

---

[54] *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

[55] Mem. in Opp'n to Pls.' Mot. to Strike 8 (Docket No. 70).

[56]  *Alameda Books*, 535 U.S. at 438.

[57] *City of Erie v. Pap's A.M.*, 529 U.S. 277, 299 (2000) (quoting *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 398 (2000)).

[58] *Z.J. Gifts D-2*, 136 F.3d at 687.

article, therefore, has only minimal actual relevance to the court's inquiry.

This conclusion is bolstered by the fact that many other courts have rejected plaintiffs' claims that the Linz article casts doubt on cities' rationale, even in the face of stronger supplemental evidence than Doctor John's has provided.  For example, in *G.M. Enterprises v. Town of St. Joseph*,[59] the Seventh Circuit found the Linz study, submitted in conjunction with an affidavit from the author, Daniel Linz, to be insufficient to cast doubt on the town's evidence. Instead, the court concluded:

> Although this evidence shows that the Board might have reached a different and equally reasonable conclusion regarding the relationship between adverse secondary effects and sexually oriented businesses, it is not sufficient to vitiate the result reached in the Board's legislative process.
>
> *Alameda Books* does not require a court to re-weigh the evidence considered by a legislative body, nor does it empower a court to substitute its judgment in regards to whether a regulation will best serve a community, so long as the regulatory body has satisfied the *Renton* requirement that it consider evidence "reasonably believed to be relevant to the problem" addressed.
>
> . . . .
>
> Under the plaintiff's view, the Town cannot demonstrate a reasonable belief in a causal relationship between the activity regulated and secondary effects, as required by *Alameda Books* and *Renton*, unless the studies it relied upon are of sufficient methodological rigor to be admissible under *Daubert*.  This argument is completely unfounded.[60]

For similar reasons, other courts have found the Linz argument, even when submitted with other evidence, insufficient to cast doubt on cities' evidence supporting their adult business

---

[59] 350 F.3d 631 (7th Cir. 2003).

[60] *Id.* at 639–40 (internal citations omitted).

ordinances.[61]  And the cities' evidence in these cases did not differ greatly from the evidence in

support of the City of Roy's ordinance, so the findings of these courts are directly applicable to

the facts of this case.  The few courts that have found the Linz article to be sufficient to cast

doubt on cities' rationale have done so only when it was submitted *in conjunction with other*

*evidence, such as expert affidavits, or where the cities provided no support for the ordinance*s *at*

*all*.[62]  The court could locate no case where a court found the Linz article alone to be sufficient to

cast doubt on a city's rationale — and the court sees no basis for reaching a contrary conclusion

here.  This is one more fatal blow to Doctor John's case because the Linz article is the very best

evidence Doctor John's submitted and the only piece of its evidence that could qualify as a

challenge to the City of Roy's rationale.  And ultimately, neither the article itself nor Doctor

John's half-paragraph referencing it constitutes actual or convincing evidence sufficient to cast

doubt on the City of Roy's studies, rationale, or justification.

       This inquiry does not change even when considering Doctor John's arguments regarding

the distinction between the secondary effects caused by businesses offering on-site consumption

of sexually-oriented products and services and businesses offering off-site consumption of such

products and services.  The Linz article questions the applicability of studies involving on-site

business to off-site businesses, but the authors do nothing more than pose the question, in a

---

    [61] *See, e.g.*, *SOB, Inc. v. County of Benton*, 317 F.3d 856 (8th Cir. 2003); *Fantasyland Video, Inc. v. County of San Diego*, 373 F. Supp. 2d 1094, 1108–09 (S.D. Cal. 2005); *Nite Moves Entm't, Inc. v. Boise*, 153 F. Supp. 2d 1198, 1208–09 (D. Idaho 2001); *City of Elko v. Abed*, 677 N.W.2d 455 464–65 (Minn. Ct. App. 2004).

    [62]  *See, e.g.*, *22nd Avenue Station, Inc. v. City of Minneapolis*, 429 F. Supp. 2d 1144, 1150 (D. Minn. 2006); *Fox*, 396 F. Supp. 2d at 651.

theoretical and academic way.  The authors present no actual evidence undermining such a link and they do not otherwise challenge the applicability of studies of on-site businesses to off-site businesses.  As discussed above, the Tenth Circuit did not require the City of Roy to make this link between on-site and off-site businesses to meet its initial burden.  And because the Linz article coupled with Doctor John's empty assertions is insufficient to cast doubt on the City of Roy's initial burden with regard to this issue, the City has no requirement to make this link at all — its initial burden is its only burden.

As noted before, Doctor John's did submit other evidence with its briefings, but the other evidence is so hollow, it is barely worth discussing.  The court only mentions it at all out of an abundance of caution.  Specifically, in addition to Linz article, Doctor John's submitted an unexplained chapter of a report,[63] an unsworn affidavit,[64] two summaries of key reports finding negative secondary effects from adult businesses,[65] and an article on the free exercise of religion.[66]

With regard to the report chapter, Doctor John's neglects to explain the relevance or applicability.  The court found the chapter to be full of seemingly conclusory statements regarding conflicting evidence on the existence of a relationship between criminal activity and sexually-oriented businesses.  The authors seem to recognize that sexually-oriented uses of land

---

[63] Kelly et al., *supra* note 49.

[64] Unsigned Aff. of Bruce McLaughlin (Docket No. 32, Exh. B).

[65] Comus III, Summary, *supra* note 41; Adult Studies, *supra* note 41.

[66] Keetch et al., *supra* note 52.

can cause negative secondary effects.  And the authors make a distinction between on-site and

off-site sexually-oriented business uses, but without providing an evidentiary foundation for the

distinction.  Basically, the authors make a series of conclusions and recommendations with no

showing of the bases behind them.  This does not constitute actual or convincing evidence

challenging the City of Roy's rationale.

     With regard to the affidavit of Bruce McLaughlin, Doctor John's again neglects to

explain the relevance or applicability.  The affidavit appears to have been submitted in a civil

case involving the City of Aurora, Colorado.  But the affidavit is facially invalid in that it is

unsigned.  Further, the court is unable to see its relevance.  From the face of the affidavit, it is not

even clear to the court what studies Mr. McLaughlin is purporting to refute.  It is clear, though,

that Mr. McLaughlin refers to St. Paul and Rochester, neither of which the City of Roy refers to,

so the studies his affidavit addresses appear to be entirely unrelated to this case.

     Doctor John's also provides two summaries of key studies of adult businesses.  It is not

clear what the summaries specifically pertain to or for what purpose they were created.  And the

court is unable to ascertain how the summaries support Doctor John's case.  As with its other

evidence, Doctor John's fails to assist the court by providing an explanation or argument.

     The "evidence" upon which Doctor John's focuses most of its efforts is the "free

exercise" article.  Doctor John's offers this article to support its claim that the purpose of the City

of Roy's ordinance is to suppress disfavored speech and that curtailing secondary effects is a

pretext for this content-based, impermissible goal.  But this article fails to support any such

claim.  An academic theory that such things happen in the religious freedom context does not

support a finding that such a thing did happen in the sexually-oriented business context, as

between the City of Roy and Doctor John's.  And, more important, this argument is a non-issue

in light of the Tenth Circuit's determination that the City of Roy's ordinance is content neutral.[67]

In short, this article does not serve to cast doubt on the City of Roy's rationale or the validity of

its evidence any more than Doctor John's other evidence does.

Finally, even if the court had found all Doctor John's evidence to be fully persuasive, it

does not serve to undermine each of the City of Roy's reasonable concerns or the links between

its concerns about secondary effects and the studies upon which it relies.  For example, with its

ordinance, the City of Roy seeks to minimize the distribution of obscene materials to minors.

None of Doctor John's evidence shows this potential secondary effect to be unassociated with

off-site businesses like Doctor John's.  Similarly, nothing in Doctor John's evidentiary record

counters the City of Roy's concerns of increased drug dealing near or at adult businesses.  The

evidence the City relied on when enacting the ordinance reasonably supports its concern over

drug sales, sales of harmful materials to minors, and other crimes, as being associated with

unregulated adult businesses.[68]  Yet, Doctor John's has offered no actual and convincing

---

[67] *Doctor John's*, 465 F.3d at 1164.

[68] *See, e.g.*, CMTY. DEV. DEP'T, OKLA. CITY, ADULT ENTERTAINMENT BUSINESSES IN OKLAHOMA CITY (1986) (Docket No. 72, Exh. 28); HUBERT H. HUMPHREY, III, ATTORNEY GEN. OF MINN., REPORT OF THE ATTORNEY GENERAL'S WORKING GROUP ON THE REGULATION OF SEXUALLY ORIENTED BUSINESSES (1989) (Docket No. 72, Exh. 17); RICHARD MCCLEARY & JAMES W. MEEKER, FINAL REPORT TO THE CITY OF GARDEN COVE (1991) (Docket No. 72, Exh. 20); MINN. CRIME PREVENTION CTR., AN ANALYSIS OF THE RELATIONSHIP BETWEEN ADULT ENTERTAINMENT ESTABLISHMENTS, CRIME, AND HOUSING VALUE (1980) (Docket No. 72, Exh. 21); Memorandum from Carl I. Delau to John Kukula, Smut Shop Outlets (Aug. 24, 1977) (Docket No. 72, Exh. 18.

evidence to cast doubt on these reasonable concerns or the link between these crimes and adult

businesses.  As Justice Kennedy wrote in *Alameda Books*, "[a]s a general matter, courts should

not be in the business of second-guessing fact-bound empirical assessments of city planners . . . .

The Los Angeles City Council knows the streets of Los Angeles better than we do."[69]  Likewise,

the City of Roy is in a better position than the Judiciary to make fact-bound determinations about

the secondary effects of adult businesses in the City.  Ultimately, Doctor John's failed to clear the

necessary evidentiary hurdle that would cast doubt on the City of Roy's evidence or the rationale

for its ordinance.  It follows that the burden of proof never shifted back to the City, and the grant

of summary judgment to the City of Roy is appropriate.

## CONCLUSION

Doctor John's failure to present sufficient evidence countering the evidence and rationale

proffered by the City of Roy compels the court to conclude Doctor John's did not raise any

genuine issues of material fact precluding a grant of summary judgment against it.  The court,

therefore, grants summary judgment to the City with regard to the issue on remand.  The Clerk's

Office is directed to enter judgment accordingly and to close the case.

DATED this 2nd day of May, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[69] *Alameda Books*, 535 U.S. at 451.